IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-00055-FL

TERRY DARNELL BUNDY,  )
                     )
    Plaintiff/Claimant, )
                     )
                     )  **MEMORANDUM AND**
    v.               )  **RECOMMENDATION**
                     )
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
                     )
    Defendant.       )

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-16, DE-18] pursuant to Fed. R. Civ. P. 12(c). Claimant Terry Darnell Bundy ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on March 15, 2011, alleging disability beginning September 6, 1997. (R. 21, 161-74, 218). Both claims were denied initially and upon reconsideration. (R. 21, 61-119). A hearing before the Administrative Law Judge ("ALJ") was held on January 30, 2013, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 21, 38-60). At the hearing, Claimant amended

his alleged onset date to March 15, 2011, and withdrew his application for a period of disability and DIB. (R. 21, 41-42). On February 14, 2013, the ALJ issued a decision denying Claimant's request for SSI benefits. (R. 21-33). On December 4, 2013, the Appeals Council denied Claimant's request for review. (R. 8-10). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

2

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id*. At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. § 416.920a(e)(3).

In this case, Claimant contends the ALJ's decision contains internal inconsistencies resulting in an erroneous RFC determination. Pl.'s Mem. at 6-7.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 23). Next, the ALJ determined Claimant had the following severe impairments: seizures, hypertension, affective disorder, degenerative disc disease, and organic brain syndrome. *Id.* The ALJ also found Claimant had a nonsevere vision impairment. (R. 23-24). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in his activities of daily living and moderate difficulties in social functioning and concentration, persistence and pace with no episodes of decompensation of extended duration. (R. 24-25).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] lifting up to 20 pounds occasionally and up to 10 pounds frequently, sitting approximately 6 hours in an 8-hour workday, and standing or walking for approximately 6 hours in an 8-hour workday with normal breaks, with the following limitations: no more than occasional balancing, bending, crawling, crouching, kneeling, stooping, and climbing of ramps or

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

4

stairs; never climb ladders, ropes or scaffolds; perform unskilled, low-stress work with no fast-paced production requirements that has only occasional changes in the work setting and that requires only occasional interaction with the public and coworkers (i.e., can work near coworkers but no team-type tasks); avoid concentrated exposure to unprotected heights and dangerous machinery; and avoid operating a motor vehicle as part of his job duties. (R. 25-26). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 30). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 31). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 31-32).

## B. Claimant's Testimony at the Administrative Hearing

At the time of the administrative hearing, Claimant was 53 years old and unemployed. (R. 42-43). Claimant graduated from high school and then served in the Army for six years. (R. 42). After leaving the Army, Claimant worked for 13 years pouring concrete until he could no longer perform heavy work. (R. 43). Claimant last worked for three months as a construction helper, cleaning up at a construction site. *Id.* Claimant lives with his 71-year-old step father and 41-year-old brother because Claimant cannot cook or clean. (R. 47). Claimant's sisters help provide food, and Claimant's brother does most of the cooking. *Id.*

Claimant explained numerous medical conditions supporting his disability claim and his inability to work full-time. Claimant began experiencing seizures sometime between 1998 and 2000 after a hospitalization during which he was unconscious for 18 or 19 days. (R. 47, 51). At first he experienced a seizure every two months, but the seizures increased in frequency over time to weekly

5

Case 5:14-cv-00055-FL   Document 21   Filed 01/15/15   Page 5 of 13

occurrences. (R. 43-44). Claimant takes medication that mostly controls his seizures, although he still experiences them on occasion. (R. 44). Claimant lost his driver's license due to the seizures and testified he has not driven in more than ten years. *Id.* However, Claimant also indicated he had a seizure while driving in 2012. (R. 57). Claimant has experienced memory problems since the hospitalization. (R. 51). Claimant was told to stop smoking due to nodules on his lungs, but continues to smoke two or three cigarettes a day, and he consumes a beer roughly every other day. (R. 52).

Claimant has degenerative arthritis and experiences aching pain in his right knee for which he receives injections every six months, and he has started experiencing pain in his left knee. (R. 45). Every three to four days he has difficulty walking and has to stay in the house due to knee pain. *Id.* Claimant has a degenerative lumbar condition that causes constant pain in his lower-mid back, and he tries not to lift or bend. (R. 46). He can lift items with his arms, like a gallon of milk, but tries not to lift anything that requires the use of his back or bending. *Id.* Claimant also experiences muscle spasms in his back for which he utilizes a TENS unit. (R. 45, 49-50). Claimant experiences numbness at times in his right leg due to a problem with his thoracic nerve. (R. 49). Claimant can walk a block before having to sit, can sit for 30 minutes before having to stand, and spends most of his day lying on the couch due to pain. (R. 50-51). He has difficulty sleeping through the night due to muscle spasms and pain. (R. 52). Claimant takes approximately 12 medications, but he could not recall specifically whether he takes pain medication. (R. 47). Claimant has high blood pressure, which he testified is controlled with medication. (R. 47-48). However, Claimant experiences headaches two to three times per week due to his high blood pressure despite the medication.

Claimant attends church once or twice a month, but does not attend more frequently due to

pain. (R. 53). Claimant reads often and watches sports at home, but no longer attends local sporting events. (R. 55-56). He travels infrequently, riding with his sister twice a year to visit family in Virginia, but they make frequent stops due to his back pain. (R. 56).

C.     **Vocational Expert's Testimony at the Administrative Hearing**

J. Adger Brown, Jr. testified as a VE at the administrative hearing. (R. 58-60). The ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant, limited to light work that would occasionally require the individual to balance, stoop, kneel, crouch, crawl, or climb ramps or stairs, never climb ladders, ropes, or scaffolds, avoid exposure to hazardous machinery and unprotected heights, avoid operating motor vehicles on the job, preform unskilled, low-stress work and no fast paced production work with only occasional changes in the work setting and only occasional interaction with public and coworkers (i.e., work near coworkers but no team-type tasks). (R. 58-59). The VE opined that such a hypothetical individual could perform the light, unskilled jobs of production helper, Dictionary of Occupational Titles ("DOT") code 867.687-018; assembler, DOT code 706.684-022; and central supply worker, DOT code 381.687-010. (R. 59). The VE also indicated that Claimant did not have transferrable skills to sedentary work. (R. 59-60).

## V. DISCUSSION

A.     **The ALJ's RFC Determination and Consideration of Dr. Fernandez's Opinion**

Claimant contends the ALJ's decision contains internal inconsistencies resulting in an erroneous RFC determination. Pl.'s Mem. at 6-7. Specifically, Claimant points out that the ALJ gave significant weight to the opinion of Dr. Fernandez, a consulting examiner, but that Dr. Fernandez's opinion does not support the RFC for light work. *Id.* The government contends that

7

the RFC is supported by substantial evidence and any error on the part of the ALJ is harmless. Gov't's Mem. [DE-19] at 8-10.

An individual's RFC is defined as the capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 416.945(a)(1); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); S.S.R. 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). Sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *See Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

With respect to medical opinion evidence, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating

8

sources, such as consultative examiners. *Id.* § 416.927(c)(2). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), she must nevertheless explain the weight accorded such opinions. *See* S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).

Here, in formulating Claimant's RFC, the ALJ specifically discussed the opinion of Dr. Fernandez, which was based on a consultative medical examination of Claimant on May 24, 2011. (R. 26, 435-38). The ALJ recited Dr. Fernandez's opinion that Claimant could be expected to stand and walk for four hours with frequent breaks and sit for four to six hours with frequent breaks and noted postural limitations related to bending, stooping, and crouching due to low-back pain, possible manipulative limitations due to an injury on the fourth digit of Claimant's left hand, and possible limitations secondary to seizures. *Id.* The ALJ also reviewed Dr. Fernandez's exam findings, including that Claimant was uncomfortable during the portion of the exam when he was in the supine position, had full motor strength in the upper extremities, and some reduced strength in the lower extremities (i.e., hip 4+/5, quadriceps 4/5, hamstrings 2+/5). (R. 27). After discussing other medical evidence, the ALJ stated that "significant weight" was accorded to the consultative evaluations of Dr. Fernandez and others, finding them to be "corroborative of the ultimate findings of this decision, which show the claimant able to perform work activities in accordance with the above stated [RFC]." (R. 30).

Claimant asserts that the limitations in Dr. Fernandez's opinion are more appropriate to sedentary work than light work and that the ALJ's finding that Claimant had the RFC for light work based on Dr. Fernandez's opinion was error. Pl.'s Mem. at 6. Further, Claimant asserts the error

9

was not harmless, because an RFC for sedentary work would have rendered Claimant disabled under the Medical Vocational Guidelines Rule 201.14. *Id.* at 7. Despite any perceived inconsistency between the weight given Dr. Fernandez's opinion and the RFC, the undersigned finds that the ALJ's decision, when considered in its entirety, provides ample justification for the RFC determination that Claimant was capable of light work with limitations and is supported by substantial evidence.

First, there is no inherent contradiction in the weight accorded Dr. Fernandez's opinion and the RFC determination. Although the ALJ accorded "significant weight" to Dr. Fernandez's opinion, that does not necessarily mean the ALJ intended to adopt the opinion in toto as Claimant seems to suggest. The ALJ thoroughly discussed Dr. Fernandez's opinion as outlined above. (R. 26-27). Thus, it is apparent from the decision that the ALJ considered Dr. Fernandez's opinion but chose to adopt a somewhat less restrictive RFC, which notably included the postural limitations on bending, stooping, and crouching suggested by Dr. Fernandez, as well as some additional postural and environmental limitations not included in Dr. Fernandez's opinion. (R. 25, 438). Moreover, the ALJ is not required to conform the RFC to include every limitation in Dr. Fernandez's opinion, provided the decision sufficiently reflects the ALJ's reasoning and is supported by substantial evidence. *See Armentrout v. Astrue*, No. 3:10CV504, 2011 WL 4625931, at *7 (E.D. Va. June 2, 2011) ("While the ALJ assigned 'significant' probative weight to the opinion, the ALJ was not then required to adopt every limitation and incorporate them into the RFC analysis."), *adopted by* 2011 WL 4625912 (E.D. Va. Oct. 3, 2011). Therefore, the determinative issue here is whether the ALJ's explanation of the RFC determination and Dr. Fernandez's opinion is adequate for the court to conduct a meaningful review. *See Hare v. Astrue*, No. 7:08-CV-36-FL, 2009 WL 873993, at *4 (E.D.N.C. Mar. 24, 2009) (finding the ALJ's failure to assign a specific weight to each medical opinion was

not reversible error because "the ALJ sufficiently discussed all of the evidence necessary for this court to conduct a thorough review of the evidence.").

To that end, Claimant contends Dr. Fernandez's opinion that due to low-back pain Claimant would be unable to walk or stand for more than four hours per day with frequent breaks is supported by Dr. Fernandez's examination of Claimant. Pl.'s Mem. at 6-7. Claimant points out that Dr. Fernandez observed Claimant was incapable of tandem walking, walking on tiptoes, and heel walked with difficulty, displayed numerous positive neurological signs consistent with nerve impingement in the lumbar spine, including reduced motor strength in his legs and reduced range of motion in his back, and was uncomfortable during parts of the evaluation when not seated. *Id.* However, medical records cited by the ALJ that post-date Dr. Fernandez's opinion are not fully consistent with the cited examination findings of Dr. Fernandez, who only examined Claimant on one occasion.

In formulating the RFC, the ALJ discussed Claimant's testimony regarding his conditions and limitations, as well as the medical records post-dating Dr. Fernandez's May 24, 2011 opinion. (R. 26-29). The ALJ specifically noted the following: on July 11, 2011, Claimant was seen at the VA Medical Center emergency room related to increased seizures and seeking to establish primary care (R. 28, 454-58); Claimant received a diagnosis of chronic low back pain with no neurological deficits on examination, managed with over-the-counter nonsteroidal anti-inflamatory drugs ("NSAIDs"), and it was suggested he could follow-up with a primary care provider (R. 28, 458); on August 18, 2011, Claimant visited the VA to establish care and examination showed normal range of motion of the lumbar spine and normal gate, tenderness to palpitation of the lumbar muscles, pain with straight leg raising on the right, and decreased deep tendon reflexes in the knees (R. 28, 450-51); Claimant's back pain was treated with Motrin and an x-ray was ordered (R. 28, 451); a January

11

13, 2012 x-ray of the lumbar spine revealed mild compression of the L1 vertebral body, which appeared old and chronic, and Claimant was prescribed pain medication and a TENS unit, which he later reported provides temporary relief (R. 29, 476, 555, 567-69). The ALJ accorded moderate weight to the State agency consultants' opinions, noting that Claimant takes minor prescription pain medication with no significant pain management treatment; however, the ALJ reduced the RFC to light exertion based on Claimant's combination of impairments. (R. 30, 61-83, 86-117, 298-300). Finally, the ALJ addressed Claimant's credibility, noting that Claimant's inability to lift anything was not supported by "essentially unremarkable" physical examinations indicating normal range of motion in the lumbar spine and full motor strength and that Claimant's medications had been "generally successful" in controlling his symptoms when he is compliant in taking these medications. (R. 31, 488, 512, 544, 556, 569). This evidence cited by the ALJ in support of the RFC determination, which post-dates Dr. Fernandez's opinion, constitutes substantial evidence supporting the ALJ's deviation from the temporal limitations on sitting and standing suggested by Dr. Fernandez.

Accordingly, where the ALJ in formulating the RFC appropriately considered all the relevant medical and other evidence in the record, sufficient for the court to conduct a thorough review, and substantial evidence cited by the ALJ supports the RFC determination, there is no reversible error in the ALJ's consideration of Dr. Fernandez's opinion.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-16] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-18] be ALLOWED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 15 day of January 2015.

Robert B. Jones, Jr.
United States Magistrate Judge